# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

JAY H. MORSE,

                               Plaintiff,

        v.                                        7:12-CV-1819
                                                         (FJS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

---

JAY H. MORSE, Plaintiff Pro Se
SANDRA M. GROSSFELD, Special Ass't U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

On January 13, 2009, plaintiff "protectively filed"[1] an application for Supplemental Security Income ("SSI") benefits, and on March 6, 2009, he filed an application for Social Security disability insurance benefits. (Administrative Transcript ("T.") 11, 152-61). Plaintiff alleged a disability onset date of July 15, 2007.

---

[1] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date.

(T. 11, 178). The claims were denied initially on July 29, 2009. (T. 11, 66-75). At plaintiff's request, Administrative Law Judge ("ALJ") Guy E. Fletcher conducted a hearing on June 28, 2011, at which plaintiff, then represented by counsel, testified via a video connection. (T. 43-65, 76). On July 13, 2011, the ALJ issued a decision denying benefits. (T. 11-19). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 15, 2012. (T. 1-6). On December 12, 2012, plaintiff, then incarcerated in a New York correctional facility, commenced this action pro se. (Dkt. Nos. 1, 2).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he/she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate disability insurance and SSI disability claims.

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. § 404.1520 (disability insurance benefits) & § 416.920 (SSI). The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, *inter alia*, Johnson *v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his/her findings with sufficient specificity to

allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Williams*, 859 F.2d at 258.

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a

reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III. <u>FACTS</u>

Plaintiff, age 45 at the time of the hearing before the ALJ, completed his GED, had a spotty employment history in a variety of occupations, and had been in and out of jail, mostly on bad-check charges, for much of his adult life. (T. 47, 54-55, 59-61, 63). Plaintiff testified that he was unable to maintain regular employment because of depression, anxiety, and post-traumatic stress disorder ("PTSD") relating to abuse during his childhood. (T. 48-53, 58-59, 63-64). The medical and other factual evidence is discussed extensively in the ALJ's decision, summarized below. (T. 15-17).[2] Relevant details of the evidence in the record are also discussed further below in the course of analyzing the issues raised by the parties and the ALJ's decision.

## IV. <u>ALJ's DECISION</u>

The ALJ found that plaintiff met the insured status requirement of the Social Security Act through March 31, 2012. (T. 13). Although plaintiff worked sporadically between 2007 and 2011 (T. 47, 173-74, 177), the ALJ determined that he had not engaged in "substantial gainful activity" since the alleged onset date of July 15, 2007. (T. 13). The ALJ found that plaintiff had the following severe impairments: depressive disorder NOS (not-otherwise-specified) and anxiety disorder NOS, but did not reference PTSD at any point in his decision. (T. 13). After reviewing all of the

---

[2] Defendant's brief (at p. 2) incorporates by reference the ALJ's statement of the evidence. (Dkt. No. 24 at 4).

evidence, the ALJ found that plaintiff did not have an impairment, or combination of impairments, that met, or medically equaled, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, with specific attention to Sections 12.04 ("Affective Disorders") and 12.06 ("Anxiety Related Disorders"). (T. 14).

The ALJ considered plaintiff's credibility, the medical opinions, and other evidence of record, and found that plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations: plaintiff was limited to unskilled work with only occasional public contact. (T. 14-17). The ALJ found that the objective medical evidence established that plaintiff had "occasional" difficulties with stress and anxiety, but that his "emotional difficulties do not impose substantial mental functional limitations." (T. 15). The ALJ summarized the findings of two treating nurse practitioners that plaintiff was "consistently fully oriented and cognitively intact without any thought disorder or psychosis" and that he has "clear thought process, intact thought content, and adequate intellectual abilities despite symptoms of irritability and edginess." (T. 15-16). These medical providers documented that Cymbalta and Vistaril had been "effective" in treating plaintiff's depression and anxiety. (T. 16). The ALJ also noted that plaintiff had not required "comprehensive therapy, significant in-patient treatment, or partial hospitalization." (T. 17). The ALJ acknowledged that plaintiff had occasional aggravated depressive or anxious symptoms, but found that they were "limited to periods of acute psychosocial stressors" which, when resolved, restored plaintiff's functioning "to baseline." (T. 16).

6

The ALJ's decision relied heavily on the June 2009 mental health evaluation report of Rexford Burnette, Ph. D. (T. 303-07), which indicated that "claimant's mental impairments impose only moderate functional limitations." (T. 16). Dr. Burnette concluded that plaintiff had mild restrictions in activities of daily living, moderate difficulties with social functioning, and mild difficulties with concentration, persistence, and pace. (T. 16-17).

The ALJ found plaintiff's allegations of total disability to be "not fully credible" based on the objective medical evidence and plaintiff's reported involvement in a "wide range" of daily activities, including watching movies, going on the Internet, shopping, being in crowds, going to the beach, applying for jobs, engaging in household cleaning and maintenance, and personal hygiene and grooming. (T. 16, 17).[3] The ALJ acknowledged that plaintiff's "work history supports his contentions of difficulties maintaining employment." (T. 17). But the ALJ noted that plaintiff stayed on one job for ten months, and that he testified that he recently refrained from quitting his current job. (T. 17). The ALJ concluded that the "assessed restriction to only occasional public contact properly compensates for the [plaintiff's] occasional difficulties with anger and irritability."

Comparing plaintiff's RFC to his past work as a retail and fast food employee, the ALJ found that plaintiff could not perform his past relevant work. (T. 18). The ALJ then considered plaintiff's RFC, as well as the relevant vocational factors, and

---

[3] The ALJ also observed that plaintiff's history of incarceration for writing bad checks "do[es] not enhance [his] credibility." (T. 17). Interestingly, Dr. Burnette, whose opinions were relied upon by the ALJ, reported that the plaintiff "did not appear to be malingering or exaggerating his symptoms." (T. 305).

found, using the Medical-Vocational Guidelines as a framework, that jobs existed in the national economy that plaintiff could perform. (T. 18-19). Thus, the ALJ determined that plaintiff was not disabled through July 13, 2011, the date of the ALJ's decision. (T. 19).

## V.  ISSUES IN CONTENTION

The pro se plaintiff makes the following arguments:

(1)   The ALJ failed to properly evaluate and consider the medical evidence of record, particularly by giving inordinate weight to the opinions of consultative and non-examining medical sources, as opposed to those of treating physicians. (Pl.'s Brf. ¶¶ 2, 11-14, Dkt. No. 21; Pl.'s Reply Brf. ¶ 2, Dkt. No. 25).

(2)   Because of prior counsel's ineffective assistance in not providing the ALJ with additional, available medical evidence, the court should allow plaintiff to supplement the record with medical reports from 2011 that document that plaintiff's depression and PTSD had "greatly deteriorated," and that he also suffered from antisocial personality disorder, which was reflected in prior medical records, but was not formally diagnosed. (Pl.'s Motion to Amend, Dkt. No. 20; Pl.'s Reply Brf. ¶¶ 1,3).

Defendant argues that the ALJ properly evaluated the medical evidence, that the Commissioner's findings at each step of the sequential analysis were based on the proper legal standards and supported by substantial evidence, and that the additional evidence proffered by plaintiff does not support a remand. (Def.'s Brf., Dkt. No. 24).

"[I]t is well settled that *pro se* litigants are entitled to a liberal construction of their papers, which should be read 'to raise the strongest arguments that they suggest.'" *Rodriguez v. Barnhart*, No. 01Civ.3411, 2002 WL 31875406, at *3 (S.D.N.Y. Dec. 24, 2002) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *Collins v. Commissioner of Social Sec.*, 960 F. Supp. 2d 487, 498 (S.D.N.Y.

2013).  Liberally construing plaintiff's arguments, the court recommends that this case be remanded for further consideration by the Commissioner because of the ALJ's failure to consider the impact of plaintiff's diagnosis of PTSD by one or more treating physicians, and his failure to adequately develop the record.

## VI. RFC/TREATING PHYSICIAN/CREDIBILITY

### A. Applicable Law

#### 1. RFC

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Id.* (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)).  RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations.  *Id.*  (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Trail v. Astrue*, No. 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

It is well-settled that the combined effect of all plaintiff's impairments, must be

considered in determining disability.  *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995).  The ALJ must evaluate the combined effect of plaintiff's impairments on his/her ability to work, "regardless of whether every impairment is severe."  *Id.*

### 2.    Treating Physician

While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and not inconsistent with other substantial evidence.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is *not* required to give the opinion controlling weight.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  The ALJ must, however, properly analyze the reasons that a report of a treating physician is rejected.  *Id.*  An ALJ may not arbitrarily substitute his/her own judgment for competent medical opinion.  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### 3.    Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-

step analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858 (RSP/GJD), 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929 (c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### B.    Analysis

Plaintiff testified before the ALJ in June 2011 that his ability to maintain steady

employment was impaired by his depression, anxiety, **and** post-traumatic stress disorder related to childhood abuse at the hands of his stepfather. (T. 48-53, 58-59, 63-64). Plaintiff reported symptoms, including rage and anger, that he associated with the prior abuse, to various medical providers between 2008 and 2010. (T. 298, 338, 353) Two of plaintiff's treating medical providers–Christine Runyan, Ph. D., and Vincent Scalise, Ed. D. (T. 296-99, 324-25)–diagnosed plaintiff with PTSD in the spring of 2008 and early 2009.

The ALJ found that plaintiff was suffering only from depressive disorder NOS and anxiety disorder NOS (T. 13), without mentioning PTSD or the impact of plaintiff's childhood abuse.[4] The ALJ's decision focused on the medical opinions of treating Nurse Practitioners Rebecca Lathrop (T. 337-39) and Tracey Toner (T. 333-36), and consultative psychological examiner Rexford Burnette (T. 303-307), all of whom diagnosed plaintiff with anxiety disorder NOS and/or depressive disorder NOS; but the ALJ did not mention that even these medical providers noted plaintiff's history or reported symptoms of PTSD. (T. 15-16).[5]

---

[4] The ALJ noted that plaintiff "experiences episodes of anger and irritability" (T. 15) and has "struggled with aggression." (T. 16). The ALJ also considered whether plaintiff suffered from an impairment under Listing 12.06 (Anxiety Related Disorders), which would be appropriately considered both for a diagnosis of anxiety disorder NOS or PTSD. *See Bittles v. Astrue*, 777 F. Supp. 2d 663, 666 (S.D.N.Y. 2011) (The Act defines PTSD as an "Anxiety Related Disorder.") (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06). But, again, the ALJ's decision never referenced plaintiff's allegations of childhood abuse or mentioned the diagnosis of PTSD.

[5] The only other medical provider mentioned by name was Patricia Salt, Ph. D., the non-examining psychologist consultant. (T. 17). The ALJ's decision (T. 15, 16), twice referenced Dr. Runyan's reports (Ex. 4F, Dkt. No. 18-7 at 48-53), for observations unrelated to her diagnosis that plaintiff suffered from PTSD.

The ALJ's decision acknowledged that plaintiff had held between twelve and fifteen different jobs over the past several years, and had never been employed on one position for more than ten months. (T. 15). The ALJ only discussed plaintiff's allegations that he was unable to work as a result of depression (T. 15), ignoring plaintiff's statements about the effect of PTSD on his ability to hold steady employment.

The ALJ concluded that plaintiff's aggravated symptoms of depressive and anxious symptoms, including incidents of aggression, were limited to "periods of acute psychosocial stressors," such as the death of his mother, a motor vehicle accident, and "relationship difficulties." (T. 16). The ALJ's finding regarding the limited duration of these aggravated symptoms is questionable given that plaintiff frequently faced the stress of prosecution and imprisonment (T. 254, 338, 343, 353, Dkt. No. 20-1 at 3), that he continued to complain of depression relating to his mother's death many months, and even years after she passed away in November 2008 (T. 274, 353, Dkt. No. 20-1 at 3), and that his "relationship difficulties" with his girlfriend and her children appeared to recur frequently (T. 296, 324, 329, 333, 337, 343, 353). In any event, the ALJ ignored the contrary evidence suggesting that plaintiff experienced symptoms of diagnosed PTSD relating to his childhood abuse that were not necessarily limited to occasional reactions to other acute psychosocial stressors and that, according to plaintiff, contributed to his inability to maintain steady employment.

"The Commissioner is required to 'consider the combined effect of all of [the

claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity' to establish eligibility for Social Security benefits." *Burgin v. Astrue*, 348 F. App'x 646, 647 (2d Cir. 2009). The ALJ's failure to consider the effect of plaintiff's PTSD on his symptoms or limitations, or at least to explain why he was not considering the diagnosis of two treating physicians that plaintiff suffered from PTSD, warrants a remand for re-evaluation of all of the medical evidence by the ALJ. *See, e.g., Rich v. Commissioner of Social Sec.*, No. 2:11-CV-85, 2012 WL 209030, at *3, 4, 7 (D. Vt. Jan. 24, 2012).

In *Rich*, "[t]he ALJ failed to discuss Rich's PTSD and ADHD anywhere in his decision, even though these diagnoses were made by multiple medical providers and were consistently discussed throughout the record." *Id.* at 3. The *Rich* court noted:

> [T]he ALJ found that Rich suffered from the severe impairment of "an anxiety disorder" . . ., and was limited to "simple" instructions and "no intense social interaction." Yet the ALJ did not discuss Rich's combined impairments– including her PTSD, ADHD, depression, and seizures–and does not appear to have included limitations for these impairments in his RFC determination. The Commissioner argues that the ALJ was not required to consider Rich's PTSD or ADHD because he considered "symptoms potentially associated with these disorders, including depression and fearful thoughts." . . . But the medical evidence demonstrates that Rich's treating providers assessed her depression, seizures, PTSD, and ADHD as separate diagnoses; if the ALJ rejected such assessment, he was required to say so and explain why. *See Burgin*, 348 F. App'x at 648.

*Id.* at 4. The court remanded for further administrative proceedings, concluding that the Commissioner failed to adequately consider Rich's PTSD and ADHD, separately and in combination with other limitations; and did not properly assess the opinions of Rich's treating medical providers. *Id.* at 7.

An administrative remand in this case is appropriate for the same reasons articulated in *Rich*. The ALJ ignored the medical evidence that plaintiff had been diagnosed with PTSD by some of plaintiff's treating providers, and failed to consider the possible symptoms and restrictions resulting from that separate diagnosis in combination with plaintiff's other diagnosed medical conditions. This error infected the ALJ's evaluation of the medical evidence, including opinions of treating physicians; his assessment of the credibility of plaintiff's statements about his symptoms and limitations; his RFC determination; and the ultimate determination that plaintiff was not disabled. *See also Armstrong v. Colvin*, No. 12 CV 8126, 2013 WL 6246491, at *9, 19 (S.D.N.Y. Dec. 3, 2013) (despite the fact that plaintiff alleged PTSD as a disabling impairment, and that a doctor diagnosed him with that condition, the ALJ made no mention of PTSD in his decision, determining only that plaintiff suffered from, *inter alia*, depressive disorder NOS and anxiety disorder NOS; on remand, the ALJ shall consider plaintiff's allegations of PTSD, along with any medical evidence and opinions about the condition in the record and set forth his basis for his determination regarding the severity of the condition); *Geraw v. Commissioner of Social Sec.*, No. 2:11-CV-32, 2011 WL 6415475, at *3, 5, 8 (D. Vt. Dec. 21, 2011) (the ALJ found that the plaintiff had severe impairments including depression and anxiety, but failed to evaluate the diagnosis of a counselor that the plaintiff had PTSD and her recommendation that plaintiff would benefit from individual psychotherapy; for this, and other reasons, the case should be remanded to the Commissioner to re-weigh the relevant medical evidence).

## VI.   DEVELOPMENT OF THE RECORD

Plaintiff filed a separate motion, asking this court to consider "new" evidence relating to his treatment at the Broome County Mental Health Department in the spring of 2011, pursuant to the standards of *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988).  (Dkt. Nos. 20, 20-1).  In her brief (at 15-19; Dkt. No. 24), defense counsel opposed the motion based on those same standards.

However, all but one of the pertinent medical records were created before the date of the ALJ's hearing in June 2011.  Moreover, during that hearing, plaintiff testified that he was currently in treatment with Broome County Mental Health.  (T. 54).  Plaintiff's counsel made no requests with respect to any records relating to that recent treatment, and the ALJ did not inquire about any such records, nor did he hold open the record to allow plaintiff's counsel to submit any additional evidence.[6]  Under the circumstances, and given the plaintiff's current pro se status, the court will consider these additional records, not under the standards of *Tirado* and sentence six of 42 U.S.C. § 405(g) relating to "new" evidence, but in the context of the ALJ's duty to develop the administrative record.

### A.   Applicable Law

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, even if the claimant is

---

[6] *Cf. Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *5 (N.D.N.Y. Jan. 23, 2013) ("courts have routinely held that an ALJ satisfies his duty to develop the record by leaving the record open for an ample amount of time for plaintiff to submit treatment records and/or a medical source statement") (citing, *inter alia*, *Martinez-Paulino v. Astrue*, No. 11 Civ. 5485, 2012 WL 3564140, at *14 (S.D.N.Y. Aug. 20, 2012)).

represented by counsel, to develop the medical record if it is incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); *Batista v. Barnhart*, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004) (although an ALJ's obligation to develop the record is heightened where the claimant appears pro se, the duty still exists even where the claimant is represented by counsel during the administrative proceedings); 20 C.F.R. §§ 404.1512(d), 416.912(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."). Furthermore, "[t]he duty of an ALJ to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician' provisions in the regulations." *Dickson v. Astrue*, No. 1:06-CV-511 (NAM/GHL), 2008 WL 4287389, at *13 (N.D.N.Y. Sept.17, 2008) (citing *Devora v. Barnhart*, 205 F. Supp. 2d 164, 172 (S.D.N.Y.2002)).

In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability, and additional information is needed to reach a determination. 20 C.F.R. §§ 404.1512(e), 416.912(e).[7] Although the ALJ must attempt to fill in any "clear gaps" in the administrative record, "where there are no obvious gaps . . . and where the ALJ already possesses a 'complete medical history,'" the ALJ is under no obligation to seek additional information. *Rosa v. Callahan*, 168

---

[7] Effective March 26, 2012, the Commissioner amended these regulations to remove former paragraph (e) and the duty it imposed on ALJs to re-contact a disability claimant's treating physician under certain circumstances. The version of the regulations in effect when the ALJ adjudicated plaintiff's disability claim should be applied, pursuant to *Lowry v. Astrue*, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) .

F.3d 72, 79, n. 5 (2d Cir. 1999).

**B.    Analysis**

The most recent mental health treatment records before the ALJ as of the June 28, 2011 hearing were completed almost one full year earlier–on July 2, 2010.  (T. 333).  The medical records proffered by plaintiff included a detailed assessment by, *inter alia*, a licensed clinical psychologist associated with the Broome County Mental Health Department, following two sessions with plaintiff in March 2011.[8]  (Dkt. No. 20-1 at 3-6).

Defense counsel argues that nothing in the proffered medical records would have influenced the ALJ to decide plaintiff's applications differently.  However, the records clearly fill a temporal gap in the medical evidence and, as discussed below, are at least potentially material to the Commissioner's evaluation of whether plaintiff is disabled.

Plaintiff's mental health treatment records from 2011 indicate that he was diagnosed with PTSD (characterized as "Chronic"), which may lead the Commissioner, on remand, to question the original ALJ's apparent rejection of the prior diagnosis of PTSD (in 2008 and 2009) as relevant to plaintiff's RFC.  (Dkt. No. 20-1 at 5-6).  The 2011 assessment notes that, because of his prior abuse by his stepfather, plaintiff "continues to have difficulty with male authority figures and

---

[8] Plaintiff was referred to Broome County Mental Health from Broome County Jail "for anxiety and depression problems."  (Dkt. No. 20-1 at 3).  Plaintiff alleges that his mental health condition deteriorated while he was incarcerated.  (Pl.'s Motion to Amend ¶ 7, Dkt. No. 20).  On remand, the ALJ should also consider obtaining relevant mental health records from the Broome County Jail.

spending time with males." (Dkt. No. 20-1 at 3). This observation corroborates that plaintiff's PTSD creates employment-related limitations that could effect his RFC.

The ALJ's original finding that plaintiff was not disabled was based, in significant part, on the medical evidence that, as recently as July 2010, plaintiff's depression and anxiety were successfully managed by medication–Cymbalta for the depression and Vistaril for anxiety. (T. 16, 17, 336). The more recent medical records proffered by plaintiff indicate that Vistaril continued to be effective in treating plaintiff's anger and anxiety, but that his most recent treatment with Cymbalta, in September 2010, was not successful because of bad side effects. (Dkt. No. 20-1 at 3). The ALJ also was influenced by the conclusion that plaintiff had not required "comprehensive therapy, significant in-patient treatment, or partial hospitalization" for his mental health conditions. (T. 17).[9] The treatment plan developed after the March 2011 assessment of plaintiff recommended that he participate in individual psychotherapy. (Dkt. No. 20-1 at 6).

Finally, the 2011 psychological assessment includes a new diagnosis on Axis II of "antisocial personality disorder." The consultative examining psychologist, Dr. Burnett, noted that she had insufficient information regarding whether plaintiff suffered from an Axis II personality disorder. (T. 307). The new diagnosis in 2011 appears to fill that gap in the prior medical evidence. While "the mere diagnosis of an

---

[9] The ALJ's conclusion was not fully supported by the medical evidence, which indicated that plaintiff was advised to have individual psychotherapy or counseling on several occasions, and that his ability to follow through with treatment was adversely affected by financial limitations. (T. 297, 303, 327, 333, 339, 356).

impairment 'says nothing about the severity of the condition,'[10] or whether a claimant is disabled, the Commissioner on remand should consider any impact of the new diagnosis on plaintiff's symptoms and restrictions.

The ALJ failed in his duty to develop the record with the 2011 records of the Broome County Mental Health Department, and perhaps other, more recent medical evidence. Accordingly, remand, pursuant to sentence four of 42 U.S.C. § 405(g), for further evaluation of this evidence, is appropriate.[11] *See, e.g., Joe v. Apfel*, No. 97-CV-772S, 1998 WL 683771, at *4-5 (W.D.N.Y. July 10, 1998) (remanding for further consideration of evidence of a subsequent diagnosis that plaintiff suffered from PTSD where the ALJ did not mention that diagnosis or otherwise indicate that he considered PTSD as a factor in determining whether plaintiff suffered from a disabling impairment or combination of impairments within the meaning of the Social Security); *Martin v. Astrue*, No. 07 Civ. 3911, 2009 WL 2356118, at *14 (S.D.N.Y. July 30, 2009) (on remand, the ALJ should consider the additional evidence plaintiff submitted to the Appeals Council regarding Martin's PTSD diagnosis because it is material, in that it reveals the true depth of plaintiff's PTSD).

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED**, and this case **REMANDED PURSUANT TO SENTENCE FOUR OF 42 U.S.C. §**

---

[10] *Burrows v. Barnhart*, No. 3:03CV342, 2007 WL 708627, at *6 (D. Conn. Feb. 20, 2007).

[11] The Commissioner will, of course, need to incorporate any additional documents considered as part of the administrative record, on remand.

**405(g)** for further evaluation consistent with the above Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: March 28, 2014

Hon. Andrew T. Baxter
U.S. Magistrate Judge